**MORGAN MELHUISH ABRUTYN LLP**
Elliott Abrutyn, Esq. (NJ Bar ID #240261967)
651 Old Mt. Pleasant Avenue, Suite 200
Livingston, New Jersey 07039
(973) 994-2500
Attorneys for Defendants, RAM Payment, LLC, Reliant Account Management, LLC,
Reliant Account Management Systems, LLC and Account Management Systems, LLC
Our File No.:  GMF 39-600 U EA/SME

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| JUNE GERMINARIO, On Behalf Of Herself And All Other Class Members Similarly Situated<br><br>VS.<br><br>RAM Payment L.L.C. f/k/a or d/b/a Reliant Account Management, L.L.C. f/k/a Reliant Account Management Systems, L.L.C. a/k/a Account Management Systems, L.L.C.; Active Debt Solutions, L.L.C. f/k/a Active Debt Solutions, Inc. d/b/a GUARDIAN LEGAL CENTER; PARALEGAL SUPPORT GROUP, L.L.C. F/K/A PARALEGAL STAFF SUPPORT, L.L.C.; JOHN DOE(S) 1-100, SAID NAME OF JOHN DOES(S) BEING FICTITIOUS | Case No.<br><br>(Removed from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. BUR-L-628-19)<br><br>**Civil Action**<br><br>**DEFENDANTS RAM PAYMENT, LLC, f/k/a or d/b/a RELIANT ACCOUNT MANAGEMENT, LLC f/k/a RELIANT ACCOUNT MANAGEMENT SYSTEMS, LLC a/k/a ACCOUNT MANAGEMENT SYSTEMS, LLC'S NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, *et seq.,* Defendants RAM Payment, LLC, Reliant Account Management, LLC, Reliant Account Management Systems, LLC and Account Management Systems, LLC (hereinafter collectively referred to as "RAM Defendants") hereby gives notice of the removal to this

Court of the civil action captioned <u>June Germinario v. RAM Payment, LLC, et al.</u>, Docket No. BUR-L-628-19, currently pending in the Superior Court of New Jersey, Burlington County, Law Division, to the United States District Court for New Jersey, Camden Vicinage, and in support thereof, states as follows:

## I.   **Background**

1.     Plaintiff June Germinario ("Plaintiff") commenced this action by filing her Complaint on March 22, 2019, in the Superior Court of New Jersey, Law Division, Burlington County.  On June 11, 2019, the RAM Defendants were served with the Summons and Complaint.[1]

2.     Originally, Plaintiff retained Legal Helpers Debt Resolution, LLC aka Law Firm of Macey, Aleman, Hyslip and Searns to help restructure Plaintiff's debt of $4,910.00 and $17,634.00 owed to her creditors.[2]

3.     Thereafter, Plaintiff alleges she was contacted by a representative of Defendant Active Debt Solutions, LLC a/k/a Active Debt Solutions, Inc. d/b/a Guardian Legal Center of Fort Lauderdale ("Guardian") stating it was taking over plaintiff's debt restructuring program.[3]

4.     Plaintiff's Complaint asserts six causes of action against the defendants: (1) violations of New Jersey RICO law, (2) violations of the New Jersey Consumer Fraud Act ("Fraud Act"), (3) violations of the New Jersey Debt

---

[1] See Acknowledgment of Service, attached hereto as Exhibit A.
[2] See ¶2 of Plaintiff's Complaint, attached hereto as Exhibit B.
[3] See Complaint, Exhibit B, ¶12 .

Adjustment and Credit Counseling Act ("Debt Adjustment Act"), and The Money Transmitters Act, (4) Civil Conspiracy, (5) Illegal Contract and Unjust Enrichment, and (6) Unconscionability.

5.      Upon information and belief, the Guardian and Paralegal Defendants are no longer in business.[4]

6.      The Superior Court of New Jersey, Burlington County Law Division, the court in which the State Court Action was pending, is located within the jurisdiction of the United States District Court for the District of New Jersey, Camden Division.

7.      The time period during which the RAM Defendants are required by 28 U.S.C. § 1446(b) to file this Notice of Removal has not yet expired.

## II.    **Basis for Jurisdiction**

8.      This Court has jurisdiction over this removed action pursuant to 28 U.S.C. §1332. This action for monetary and equitable relief could have originally been filed in this Court because complete diversity of citizenship exists between all Plaintiffs and all Defendants, and the value of the matter in controversy, exclusive of interest and costs, exceeds $75,000.00.[5]

---

[4] See Certification of Elliott Abrutyn and Exhibit B, Para. 26.
[5] 28 U.S.C. § 1332.

## III.    Diversity of Citizenship

9.     The diversity of citizenship requirement is met in this case, as no Plaintiff has the same citizenship as any Defendant.

10.    Plaintiff resides in the State of New Jersey. Thus, Plaintiff is a citizen of the State of New Jersey.[6]

11.    RAM Payment, LLC ("RAM Payment") is a limited liability company formed under the laws of the State of Delaware with a principal place of business located at 412 N. Cedar Bluff Road, Suite 400, Knoxville, TN  37923.  The operating entity is RAM Payment.  RAM Payment processes payments, data processing and related accounting services.

12.    RAM Payment is owned by RAM America, Inc., a Delaware corporation.  RAM America, Inc. is 60% owned by Westshore RAM LLC, a Delaware limited liability company (David Malizia is the sole managing member and a citizen of Florida) and 40% by Reliant Account Management, LLC.  RAM America's principal place of business is 412 N. Cedar Bluff Road, Suite 400, Knoxville, TN  37923.

13.    Reliant is 60.2% owned by Austinco, LLC, a single member California LLC owned by Scott Austin who is a citizen of California; 4.7% is owned by William Ergas, IRA; and 35.1% is owned by GS Associates Holdings LLC, a limited liability corporation formed under the laws of California and re-domesticated in Arizona.  It

---

[6] *See* Complaint, Exhibit B, ¶1.

is owned 47.5% by the undersigned, 44.5% by Greg Winters who is a citizen of a state other than New Jersey, 1.5% of the Hickman Family Trust located in California, 1.5% by Diane Hickman of California, 2% by Stuart Boesche of California and 3% by Christopher Bolger of California.  All of the individuals are citizens of a state other than the state of New Jersey.  Reliant's principal place of business is located at 412 N. Cedar Bluff Road, Suite 400, Knoxville, TN  37923.[7]

14.    Reliant Account Management Systems, LLC is a limited liability company formed under the laws of the state of California and is 50% owned by each of Austinco, LLC and GS Associates Holdings LLC.    Reliant Account Management Systems, LLC's principal place of business is located in California.

15.    The other defendants are out of business and have not been served with the Complaint (see Footnote 4).

## IV.    Value of the Amount in Controversy

16.    Based on the allegations in the Complaint, the value of the matter in controversy exceeds the sum of $75,000.00,[8] exclusive of interest.[9] The burden is on the RAM Defendants to establish by a preponderance of the evidence that the

---

[7] See Declaration of Steve Chaya with respect to all the corporate citizens.

[8] Defendants do not admit, however, that Plaintiff is entitled to any of the relief requested, damages in excess of $75,000.00, or attorneys' fees and costs. Plaintiff has, nonetheless, made such claims and demands and placed them before the Court in her Complaint, making RAM's recitation here of such issues and allegations sufficient to satisfy RAM's obligation to show that the sum or value of the matter in controversy exceeds the jurisdictional threshold.

[9] 28 U.S.C. 1332(a)(1).

jurisdictional requirements are met.  The general rule is to decide the amount in controversy from the Complaint itself.

17.    Since Plaintiffs do not specifically state in the Complaint that the amount in controversy is less than $75,000, the case can be removed unless it appears to a legal certainty that Plaintiffs cannot recover more than $75,000.[10]

18.    According to the Complaint Plaintiff entered into a debt settlement program with Legal Helpers Debt Resolution, LLC a/k/a the Law Firm of Macey, Aleman, Hyslip and Sears ("LHDR"), with principal offices in Chicago, Illinois for the purpose of having LHDR negotiate a reduction of her indebtedness to various creditors.  There were only two creditors with whom Plaintiff authorized LHDR to negotiate-Capital One, owed $4,910 and Sears owed $17,634 for a total of $22,544.

19.    The Complaint alleges that on or about May 22, 2014 Plaintiff was contacted by a representative of defendant Guardian Legal Center of Fort Lauderdale, Florida, i.e., defendant Active Debt Solutions, LLC a/k/a Active Debt Solutions, d/b/a Guardian Legal Center ("Guardian") stating it was taking over Plaintiff's debt settlement program.

20.    Defendant Guardian utilized defendant Reliant Account Management of Newport Beach, California ("RAM") as the escrow agent to perform the same functions as GCS.  RAM withdrew monies from Plaintiff's New Jersey account and

---

[10] *See* <u>Samuel-Bassett v. KIA Motors Am., Inc.</u>, 357 F.3d 392, 397 (3d Cir. 2004).

held them in an escrow account for the same purpose as the escrow account maintained by GCS.

21.     Plaintiff was advised her monthly payment under the debt resolution plan would be $416 per month and would begin May 23, 2014.

22.     RAM began withdrawing funds from Plaintiff's bank account on May 23, 2014.

23.     The last withdrawal from Plaintiff's account by RAM occurred on April 24, 2017.

24.     It appears that the total sum of $7,986.08 was paid by Plaintiff to the debt reduction plan administered by RAM and $8,127.28 to Guardian Legal Center for a total of $16,113.36.

25.     Plaintiffs seek relief as against all Defendants pursuant to the New Jersey RICO Act and the Fraud Act.

26.     As against the RAM defendants Plaintiff's actual damages are alleged to be $7,986.

27.     Plaintiff has requested that these damages be trebled under both the New Jersey RICO Act and a fraud act giving rise to a damage claim of roughly $24,000 before Plaintiff's attorneys fees recoverable are under both statutes.

28.     Alternatively, Plaintiff asserts she is entitled to an award for punitive damages. Punitive damages are recoverable under Plaintiff's civil conspiracy claim.

An award of punitive damages can be as high as five times the liability of any defendant, up to $350,000.00.

29.     Plaintiffs allege that the Defendants created and operated a plan to illegally engage in the debt adjustment business in New Jersey.  Plaintiffs further allege that Defendants misled consumers in New Jersey, and engaged in the unlawful practice of law.  Based on the allegations against all Defendants set forth in the Complaint, a jury could conclude that Plaintiffs are entitled to punitive damages.

30.     Plaintiffs have thus set forth a colorable right to recover punitive damages under New Jersey Law, as Defendants actions could be considered willful and reckless.

31.     Plaintiffs allege that all Defendants acted in concert to create a basic plan and operating procedure to engage in the debt adjustment business.  Such a finding would make all Defendants jointly and severally liable for the aggregated amount of actual damages and punitive damages under the civil conspiracy claim.

32.     Plaintiffs therefore assert a conspiracy claim for actual and punitive damages amounting to as much as $96,678, which may be considered for the purposes of calculating the amount in controversy.

33.   In addition, the RICO Act and Fraud Act both provide for Plaintiffs, if they prevail, to recover attorneys' fees.[11]  If Plaintiffs are successful, an award of attorneys' fees is mandatory.

34.   In <u>Venuto</u>, this Court denied a motion to remand in a similar case before the Court on diversity jurisdiction, where attorneys' fees and punitive damages contributed to satisfying the jurisdictional threshold.  The Complaint in that case facially alleged $14,900 in compensatory damages. When trebled under the Fraud Act, the claims amounted to $44,700. The Court concluded that it did not appear to a legal certainty that Plaintiff could not recover the jurisdictional minimum when attorneys' fees and punitive damages were added to the trebled figure.

35.   In comparably complex RICO and Fraud Act cases, Courts have awarded significant attorneys' fees.[12]  Even where fees are reduced, as in, for

---

[11] See <u>Venuto v. Atlantis Motor Grp., LLC</u>, No. CV173363RBKKMW, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) ("[f]or purposes of calculating the amount in controversy, reasonable attorneys' fees and punitive damages must be counted if they are available under state law.").

[12] See e.g., <u>Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc.</u>, No. A-3854-16T1, 2019 WL 692120, at *8 (N.J. Super. Ct. App. Div. Feb. 20, 2019) (reversing lower court where only $19,800 in fees were awarded opposed to the $247,701 sought); <u>Singer v. Cozzino</u>, No. A-2038-14T3, 2016 WL 3245348, at *4 (N.J. Super. Ct. App. Div. June 14, 2016) (affirming award of $119,363.14 under N.J. RICO Act)

instance, the Doe v. Bank of America, N.A., case, plaintiffs recovered $58,555.00 in attorneys' fees under the Fraud Act.[13]

36.    Furthermore, Plaintiffs seek injunctive relief.  In an action seeking injunctive relief, the amount in controversy is measured by the value of the object in litigation.[14]  In the Third Circuit, the value of the injunctive relief is "the value of the rights which the plaintiff seeks to protect."

37.    Here, Plaintiffs seek in substantial part to stop RAM from conducting any business in the State of New Jersey.  Plaintiffs claim they have the right to this relief, making this the right the Court must value when considering the amount in controversy.

38.    RAM's business that Plaintiff seeks to shut down is the opening and administration of special purpose accounts ("SPAs") and/or dedicated account ("DAs") used, among other things, to make payments to consumers' creditors who have contracted with debt management companies and have requested that RAM open and manage an account to be used for that purpose. Thus, for purposes of evaluating the amount in controversy in this case, the funds held in the accounts of RAM's New Jersey account holders and the fees those account holders pay to RAM

---

[13] See Doe v. Bank of Am., N.A., No. CV 16-3075, 2018 WL 5005004, at *6 (D.N.J. Oct. 15, 2018) (recovery of attorneys' fees was reduced to reflect the percentage of success in the action).

[14] Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977); Columbia Gas Transmission Co. v. Tarbuck, 62 F.3d 538, 542 (3rd Cir. 1995); USAA Casualty Ins. Co., 2018 WL 3213324 at * 4.

for account administration must be considered the object of the requested injunctive relief.

39.    Thus, measuring the value of the injunctive relief sought by Plaintiff as to RAM starts with the value of all funds held by RAM in SPAs and DAs on behalf of New Jersey account holders.

40.    While we do not have an exact amount of those funds as of this filing, the Complaint alleges that as of July 2018, RAM had processed 750,000 settlement payments which apparently does not include the individual monthly transactions. Assuming each payment only averaged $500, the total would be as high as $375,000.[15]    This figure is thus considered when examining the amount in controversy. Likewise, the disruptive impact on the hundreds of New Jersey account holders must be part of the calculus.

41.    In addition, Plaintiff seeks to freeze RAM's assets wherever held.[16] The relief requested by Plaintiffs does not distinguish between assets held for the purposes of settling consumer debt in New Jersey or otherwise. Thus, Plaintiffs plainly seek from the Complaint the freezing of all of RAM's assets, wherever held, for whatever purpose.

---

[15] See Complaint, Exhibit B, Para. 25

[16] *See* Complaint, Exhibit B, pg. 17, ¶"D".

## V.    **Rule of Unanimity is Satisfied**

42.    A party that seeks to remove an action from state court to federal court must abide by the procedural requirements set out in 28 U.S.C. § 1446, requiring that all defendants unanimously join in or consent to removal within 30 days of service of the Complaint on each of such defendants. Here, it appears that the other defendants have not been served and are out of business.

## VI.    **Removal is Timely Filed and Notice Has Been Given**

43.    This Notice of Removal is timely filed within thirty (30) days of service of the Summons and Complaint on RAM, and within one year after the commencement of the action, as permitted by 28 U.S.C. § 1446(b).[17]

44.    As required by 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff, and a copy will be promptly filed with the Clerk of the Superior Court of New Jersey, Burlington County.

## VII.    **Pleadings and Process**

45.    As required by 28 U.S.C. § 1446(a), RAM has attached all state court "process, pleadings, and orders" served upon it in the Superior Court of New Jersey with this Notice of Removal.[18]

---

[17] 28 U.S.C. § 1446(b).

[18] *See* Exhibits A and B.

## VIII.   Venue

46.   Venue for Removal is proper in this Court pursuant to 28 U.S.C. § 1446(a), because this action is currently pending in the Superior Court of New Jersey, Burlington County, which is in the same District as the United States District Court for New Jersey, Camden Division.

## IX.   Non-waiver of Defenses

47.   Nothing in this Notice shall be interpreted as a waiver or relinquishment of Defendants' right to assert any defense or affirmative matter, including, without limitation, motions to dismiss pursuant to Federal Rule of Civil Procedure 12 or a motion to compel arbitration.

## X.   Conclusion

48.   Defendants respectfully request that this matter be removed from the Superior Court of New Jersey, Burlington County to the United States District Court for New Jersey, Camden Division based upon diversity jurisdiction. This Notice of Removal has been timely filed. Therefore, removal is proper and this action should proceed before this Court.

Dated:  July 11, 2019                                    Respectfully submitted,

Elliott Abrutyn

{01414468}

# EXHIBIT A



# KNOX COUNTY SHERIFF'S OFFICE

Tom Spangler
Sheriff

State of Tennessee
County of Knox

Officer _Bowers_ , being duly sworn, deposes and says that he/she is

over the age of 21 years. That on the _11_ day of _June_, two thousand

nineteen, Officer _Bowers_ served the foregoing _Summons_,

Docket # _BuRL62_ upon _RAM Payment_ and leaving a
                    _814_        _LLC_

copy of it with _____. Deponent further says that he/she knew the

person served as foresaid to be the person mentioned and described in said

_____ as the defendant therein.

_____
Deputy Sheriff of Knox County,
Tennessee

Sworn and subscribed before me
The _12_ day of _June_, 2019

_Sandra S. Scott_
Notary Public
My Commission Expires: _5/27/20_

_400 Main Street •   Knoxville, Tennessee 37902 •   865-215-2243_
_www.knoxsheriff.org_

# EXHIBIT B

{01414468}

POLINO and PINTO, P.C.
A Professional Corporation
Attorneys at Law
720 East Main Street, Suite 1C
Moorestown, NJ 08057
(856) 727-1777
By:   Joseph M. Pinto, Esquire/012951977
        Attorneys for Plaintiff

| | | |
|---|---|---|
| JUNE GERMINARIO, on behalf of herself and all other class members similarly situated | : | SUPERIOR COURT OF NEW JERSEY BURLINGTON COUNTY LAW DIVISION |
| | : | |
| Plaintiff | : | DOCKET NO. Civil Action |
| v. | : | |
| RAM Payment, L.L.C. f/k/a or d/b/a Reliant Account Management, L.L.C. f/k/a Reliant Account Management Systems, L.L.C. a/k/a Account Management Systems, L.L.C.; Active Debt Solutions, L.L.C. f/k/a Active Debt Solutions, Inc. d/b/a Guardian Legal Center; Paralegal Support Group, L.L.C. f/k/a Paralegal Staff Support, L.L.C.; John Doe(s) 1-100, said name of John Doe(s) being fictitious | : | |
| Defendants | : | COMPLAINT |

Plaintiff, JUNE GERMINARIO, on behalf of herself and all other class members

similarly situated, residing at 23 Southfield Drive, Sussex, New Jersey, 07461, by way of

Complaint against the defendants, says:

## INTRODUCTION

The defendants created and engaged in a plan or scheme to defraud the residents of

the State of New Jersey and other states by performing unlawful debt adjustment and money

transmission activities and engaged in the unauthorized practice of law in the State of New Jersey. The defendants and their individual members, recruits, representatives, employees and agents employ and partners with both front-end lead generators and back-end service companies, financial institutions and other attorneys in New Jersey and other states to provide debt adjustment services as defined by New Jersey law creating the impression that these services are to be performed or provided by attorneys and licensed debt adjusters. In fact, these services are not performed by, nor were they ever intended to be  performed by, attorneys and licensed debt adjusters.

This unlawful plan or scheme is in violation of the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, et seq. since these services are performed by for-profit entities or persons not permitted to operate such business in New Jersey under the Act.

Such debt adjustment activity further constitutes the unauthorized practice of law in the State of New Jersey.

Both violations constitute crimes under New Jersey law and are in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1, et seq., the New Jersey Money Transmitters Act, N.J.S.A. 17:15C-1, et seq., and other State laws.

Plaintiffs seek recovery of monies paid to the defendants, other damages, and injunctive relief enjoining and restraining the defendants from conducting such business in New Jersey or with New Jersey residents.

## FACTS

1.    Plaintiff June Germinario ("Plaintiff") is a resident and citizen of the State of

2

New Jersey, residing at 23 Southfield Drive, Sussex, New Jersey.

    2.      On or about August 16, 2010, plaintiff entered into a debt settlement program agreement with Legal Helpers Debt Resolution, L.L.C. a/k/a The Law Firm of Macey, Aleman, Hyslip and Searns ("LHDR"), with principal offices in Chicago, Illinois, for the purpose of having LHDR negotiate a reduction of her indebtedness to various creditors and arrange for payment of these compromised amounts. There were only two creditors with whom plaintiff authorized LHDR to negotiate - Capital One, owed $4,910.00, and Sears, owed $17,634.00, for a total of $22,544.00.

    3.      On or about August 16, 2010, plaintiff executed a document entitled Special Purpose Account Application under which Global Client Solutions, L.L.C. ("GCS" or "Global") of Tulsa, Oklahoma, was to electronically withdraw funds from plaintiff's New Jersey bank account and deposit them into an aggregate escrow/trust account (called a Special Purpose Account ["SPA"]) established by GCS in a bank to be chosen by it, and designating a subaccount in the name of the plaintiff. The purpose of this SPA was to hold funds withdrawn on a monthly basis from plaintiff's New Jersey bank account in an amount established by LHDR until it received instructions on how they were to be disbursed.

    4.      The funds were to be disbursed to pay monies to any creditors who agreed to a settlement of their indebtedness with the plaintiff, as well as to pay any costs and fees for LHDR's attorneys' services and administrative fees and costs and GCS' costs of administration.

    5.      On March 3, 2011, plaintiff executed a document entitled Legal Helpers Debt Resolution, L.L.C. Amended Letter of Engagement concerning the terms of its representation

3

of the plaintiff.

6.      Plaintiff was initially advised that her monthly payments under her debt adjustment program would be $407.31. This was increased to $421.06 and on September 24, 2010, GCS began to withdraw the sum of $421.06 from her New Jersey bank account and deposit those funds into the said aggregate SPA in a bank unknown to plaintiff. Plaintiff was notified by GCS on May 31, 2012 that her account had been transferred from that bank to Comerica Bank of Dallas, Texas.

7.      GCS withdrew the sum of $421.06 from plaintiff's New Jersey bank account on September 24, 2010. On October 26, 2010, GCS began withdrawing the sum of $416.06 from plaintiff's bank account and continued to do so for another 30 months until April 24, 2014. Global's withdrawals totaled $12,902.86. On September 26, 2011 GCS withdrew $75.00 from plaintiff's account for an ACH monthly fee. The total deposited in plaintiff's special purpose account was $12,977.86. From this sum, GCS dispersed illegal customer and transaction fees of $4,888.23 to itself and others while paying creditors only $1,000.00.

8.      On June 3, 2014, Global sent plaintiff a letter advising her that the relationship between Global and LHDR had been terminated. LHDR had filed a Chapter 7 bankruptcy petition in 2014.

9.      On June 9, 2014, plaintiff called GCS to terminate her account and request refund of the funds therein. Plaintiff was told that such a request had to be in writing and on June 10, 2014, plaintiff emailed Global instructions to terminate her account. On June 17, 2014, Global issued a check on an account in Comerica Bank in the sum of $8,517.09, which plaintiff received and deposited into her checking account.

4

10.     Global is a for-profit limited liability company formed in Oklahoma in 2003 and located at 4343 South 118th E Avenue, Suite 220, Tulsa, OK 74146. It is neither registered to do business in New Jersey nor does it maintain an office in this state.

11.     Global markets and advertises itself as follows: It is a service provider to debt settlement companies providing account management services for their customers. It is one of the largest account management companies in the United States and has developed and implemented its account management services specifically for the purpose of debt resolution, utilizing among other things non-interest bearing special purpose or dedicated accounts (hereinafter "SPA") which it claims are insured by the FDIC. SPA's are disbursement accounts where monies are deposited usually through direct deposit arrangements with customers of the debt settlement companies. Monies are disbursed from the SPA's to pay its fees and those of the debt settlement companies and creditors and other front-end or back-end affiliates of these parties and their employees, agents or servants. Global claims not to be associated with independent debt settlement companies. It markets itself as having created some of today's most cutting edge debt settlement account management products and is recommended by over 500 highly regarded debt settlement companies. These debt settlement companies receive benefits such as improved cash flow with separation of debts and company fees, improved retention rate, decrease in overall servicing costs, less time managing client account information, decrease client set-up time, web-based software interface and open integration with debt management software packages. Disbursement of SPA's are made only with the approval of the clients of the debt settlement companies, but those companies have access to the account information. Global maintains and operates

5

debt management accounts for hundreds of third party businesses that offer debt adjusting services, utilizing electronic withdrawal of funds from a debtors account or receipt of funds forwarded by other means from the debtor and deposits these funds in a Special Purchase or Dedicated Account, administered and maintained by Global.

12.    On or about May 22, 2014, plaintiff was contacted by a representative of defendant Guardian Legal Center of Fort Lauderdale, Florida, i.e., defendant Active Debt Solutions, L.L.C. a/k/a Active Debt Solutions, Inc. d/b/a Guardian Legal Center (hereinafter "Guardian") stating it was taking over the plaintiff's debt settlement program.

13.    Defendant Guardian utilized defendant Reliant Account Management of Newport Beach, California ("RAM") as the escrow agent to perform the same function as GCS. RAM withdrew monies from plaintiff's New Jersey account and held them in an escrow account for the same purposes as the prior escrow account she maintained with GCS.

14.    Plaintiff was advised her monthly payment under the debt resolution plan would be $416.06 per month and would begin May 23, 2014.

15.    Plaintiff was instructed by Guardian to send the funds she had received from Global to an entity known as Paralegal Staff Support, L.L.C. ("PSS"). On June 30, 2014, plaintiff forwarded an electronic check in the sum of $8,127.28 to PSS as instructed.

16.    RAM began withdrawing funds from plaintiff's bank account on May 23, 2014 in the amount of $416.06 per month.

17.    The last withdrawal from plaintiff's account by RAM occurred on April 24, 2017. Between May 2014 and April 2017, the following sums were withdrawn from plaintiff's account by RAM: (a) $416.06 for seventeen months [$7,073.02]; (b) $208.03 for

6

two months [$416.06]; (c) $49.00 for eight months [$392.00]; and (d) $35.00 for three months [$105.00] for a total of $7,986.08. The total paid by plaintiff under the debt resolution plan administered by RAM and Guardian Legal Center total $16,113.36 ($8,127.28 plus $7,986.08).

18.    RAM paid itself at least $9.95 in illegal transaction charges each month for thirty months for a total of $298.50. RAM also paid illegal sums to itself and Guardian Legal Center as fees in an amount, to the best of plaintiff's knowledge, equaling all of the funds withdrawn from her account. To the best of plaintiff's knowledge, no funds were paid to creditors.

19.    Reliant Account Management Systems, L.L.C. ("RAMS") was formed in California on April 17, 2009, with offices located at 1301 Dove Street, #1030, Newport Beach, California 92660. Its last corporate filing in California reveals its business address as 412 North Cedar Bluff Road, Suite 400, Knoxville, Tennessee 37923 and 1220 S Street, Suite 150, Sacramento, California 95811. It is not registered to do business in New Jersey in any capacity now or prior to the filing of this lawsuit.

20.    RAMS changed its name to Reliant Account Management, L.L.C. ("RAM") and registered in Tennessee on July 22, 2017 under the new name. It changed its name to Account Management Systems, L.L.C. ("AMS") on July 6, 2018. RAM/AMS was purchased by Westshore Capital Partners, Rivergate Towers, 400 N. Ashley Drive, Suite 1175, Tampa, Florida 33602-4394. Westshore formed an entity known as RAM Payment, L.L.C. ("RAMP") in Delaware on October 24, 2018, which registered to do business in Tennessee on January 7, 2019 at the same address as RAM/AMS and according to the Tennessee Secretary

7

of State's records, assumed the name Reliant Account Management ("RAM").

21.     RAM contracts with individual debt settlement companies (which can be law firms or lay companies) to provide services to the individual consumer customers of the debt settlement company.  Among other things, RAM enters into agreements with consumers allowing RAM to debit consumers' bank accounts (usually through ACH transfers) in monthly amounts established by the debt settlement companies and deposits these funds in an aggregate RAM trust account from which they are disbursed according to a schedule established by the debt settlement company.  The trust account is held in banks in California or wherever RAM chooses.

22.     RAM pays itself fees out of these trust funds and also forwards to the debt settlement companies their costs and fees.  It is also to disburse funds from the trust account to creditors if debt settlements are reached.

23.     RAM states, in its marketing propaganda, that its goal is to provide the consumer with an efficient, state of the art settlement solution and to facilitate settlement disbursements.

24.     RAM also states therein that it is required to comply with the law, and to report suspected illegal activity.

25.     According to RAM, as of July 2018, it had processed over 750,000 settlement payments which apparently does not include the individual monthly transactions withdrawing funds from consumers' bank accounts or dispersing fees and costs to itself and the debt settlement companies.

26.     On April 12, 2018 and April 24, 2018, the Federal District Court for the

8

Southern District of Florida entered an Order in the case of FTC and State of Florida v. Jeremy Lee Marcus, et al., Case No. 17-60907-cv-Moreno, which placed under receivership for liquidation purposes the defendants Guardian and Paralegal, as well as approximately thirty other companies owned by Jeremy Marcus (defendant in that case and whose assets were also seized) who along with others involved with these companies were permanently enjoined and restrained from, among other things, operating or engaging in any manner in the debt settlement industry.

27.    Performance of debt adjustment and credit counseling services in New Jersey is regulated by the New Jersey Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, et seq. (hereinafter "the Act") and the regulations promulgated by the Commissioner of the Division of Banking and Insurance as authorized under N.J.S.A. 17:16G-4.

28.    Under New Jersey law, no person other than a non-profit social service agency or a non-profit credit counseling agency shall act as a debt adjuster, N.J.S.A. 17:16G-2(a), and such agencies must first obtain a license to do so from the Department of Banking and Insurance, N.J.S.A. 17:16G-2(b).

29.    A debt adjuster under New Jersey law means a person who either (a) acts or offers to act for a consideration as an intermediary between the debtor and his creditors for the purpose of settling, compounding or otherwise altering the terms of payment of any debts of the debtor or (b) who to that end receives money or other property from the debtor or on behalf of the debtor for payment to or distribution among the creditors of the debtor. N.J.S.A. 17:16G-1(c)(1).

9

30.　　An attorney at law admitted to practice in the State of New Jersey who is not principally engaged as a debt adjuster shall not be deemed a debt adjuster under the Act and therefore not subject to licensure.

31.　　The fees which a licensee may charge for debt adjustment services under the Act shall not exceed one percent of the gross monthly income of the person to whom the service is rendered, but in no case shall the fee exceed $15.00 per month, except as may be otherwise provided by rule or regulation promulgated by the Commissioner. The Commissioner is authorized to set the maximum fee for credit counseling. N.J.S.A. 17:16G-6.

32.　　Under N.J.A.C. 3:25-1.2, the fee for debt adjustment may not exceed $25.00 per month or $60.00 per month for credit counseling services.

33.　　Any debtor injured by violation of the Act may bring a civil action for recovery of damages.

34.　　Under the Act, every licensee acting as a debt adjuster shall disburse to the appropriate creditors all funds received from a debtor less any fees permitted by N.J.S.A. 17:16G-6 within ten days of receipt of those funds, maintain a separate trust account in a qualified bank as defined under paragraph 12 of N.J.S.A. 17:9A-1 in the name of the debt adjuster for the benefit of the debtors, serviced by the debt adjuster, and maintain an appropriate ledger book for the trust account required, having at least one single page for each debtor with the appropriate entries of all deposits into and disbursements from each debtor's account, including copies of all records showing disbursements to creditors and receipts from debtors which legible records shall be maintained in accordance with generally

10

accepted accounting principals for not less than six years following the close of each debtor's account.

35.     Under N.J.S.A. 2C:21-19(f) (and N.J.A.C. 3:25-3.1(d)), any person who shall act or offer to act as a debt adjuster without a license as required by the Act unless exempted from licensure pursuant to the Act shall be guilty of a crime of the fourth degree.

36.     The New Jersey Money Transmitters Act, N.J.S.A. 17:15C-1, et seq. (the "Act") requires persons engaging in business in New Jersey of either (1) the receipt of money for transmission or transmitting money within the United States or locations abroad by any and all means, including but not limited to payment instrument, wire, facsimile, electronic transfer or otherwise for a fee, commission or other benefit, or (2) the receipt of money for obligors for the purpose of paying obligors' bills, invoices or accounts for a fee, commission or other benefit paid by the obligor (N.J.S.A. 17:15C-2), to obtain a license (N.J.S.A. 17:15C-4) and post a bond or other security N.J.S.A. 17:15C-6).  The Act does not apply to licensed debt adjusters N.J.S.A. 17:15C-3(a)(6) or banks N.J.S.A. 17:15C-3(a)(4)).  None of the defendants have money transmitters licenses allowing them to operate in New Jersey which violation constitutes a crime of the third degree under the Act, N.J.S.A. 17:15C-24.

37.     The actions of and the services provided by all of the defendants and all of their individual servants, agents and employees are those of debt adjusters and money transmitters as defined by New Jersey statute.

38.     None of the defendants are licensed by the Commissioner of the Department of Banking and Insurance to perform debt adjustment or any other services, nor are they qualified to do so as they are not non-profit social service agencies or consumer credit

11

counseling agencies as defined under N.J.S.A. 17:16G-1.

39.     The defendants are not attorneys at law of the State of New Jersey and were principally engaged as debt adjusters, thus, they are not exempt from the licensing requirement of the statute and also are engaged in the unauthorized practice of law in the State of New Jersey.

40.     The business of debt adjustment and provision of debt resolution services are considered the practice of law under the laws of the State of New Jersey.

41.     All of the defendants and their agents, servants and employees, by operating as a business providing debt adjustment and resolution services, are engaged in the unauthorized practice of law.

42.     Under N.J.S.A. 2C:21-22(a), a person is guilty of a disorderly persons offense if the person knowingly engages in the unauthorized practice of law and under subsection (b) is guilty of a crime of the fourth degree if the person knowingly engages in the unauthorized practice of law and creates the false impression that the person is licensed to practice law or derives a benefit or in fact causes injury to another.

43.     All of the defendants have also engaged in a criminal conspiracy as defined by N.J.S.A. 2C:5-2 by formulating, promoting, facilitating and engaging in the crimes of unlawful debt adjustment, unlawful money transmitting and the unauthorized practice of law.

44.     All of the defendants created the basic plan and operating procedure to engage in the debt adjustment business within the State of New Jersey.  Defendants utilized their status as attorneys, or created an appearance they were attorneys, to gain a competitive

12

advantage in the debt adjustment marketplace and deceive consumers.

45.     Consumers in New Jersey were misled into believing they were being represented by attorneys authorized to do business in New Jersey as debt adjusters and thus would receive the professional services expected from an attorney by the general public.

46.     In fact, none of the defendants provided legal services or any legal advice to plaintiff or any New Jersey consumers, nor did they ever intend to do so.

47.     All of the defendants and their employees and agents were to hold plaintiff's funds in the dedicated account for distribution for fees, costs and possible debt reduction payments to creditors.

48.     The defendants created a marketing and promotion program to attract debtors through all forms of advertising in the media and contracting with lead providers for the purpose of selling debt resolution services throughout New Jersey and the United States.

49.     The customers were asked for information on the type and amount of indebtedness, their employment and income, their social security number for purposes of obtaining a credit report, their checking account number, the bank routing number and an email address.  They were told this information would be reviewed for a determination of whether the customer qualified to participate in the plan.  Customers were advised that, if accepted, they would pay money every month to be accumulated in an account which would be used for the purposes of negotiating with creditors and would pay a small percentage of the debt including fees.  Customers were not told that creditors might not accept any negotiation of the debt.

50.     The information obtained about the customer was utilized to determine how much the customers would pay.  No one was accepted for a plan unless they had at least

13

$5,000.00 to $10,000.00 in debt. The information was inserted into a payment calculator which determined how much the customer would pay without any consideration of the customer's personal circumstances and without any contact with the creditors.

51.    Once the documents were signed, the customer was advised (1) that any future contacts were to be through defendants; (2) to avoid all contacts with creditors; (3) not to negotiate with the creditors; and (4) missing payments would disqualify the customer from the program.

## COUNT ONE
## New Jersey RICO Law

52.    Plaintiff repeats the allegations of the first 51 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

53.    All of the defendants are debt adjusters as defined under N.J.S.A. 17:16G-1(c)(1) and none of the defendants are money transmitters as defined by the New Jersey Money Transmitters Act.

54.    All defendants are enterprises either separately and/or in unison as defined under N.J.S.A. 2C:41-1(c).

55.    At all relevant times, all defendants were engaged in trade or commerce or in activities affecting trade or commerce in connection with the sale of debt adjustment services in the State of New Jersey to New Jersey residents and residents of other states.

56.    The defendants are persons as defined by N.J.S.A. 2C:41-2(b).

57.    These persons were either employed by or associated with each other and conducted or participated directly or indirectly in the conduct of the affairs of these enterprises through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c) and

14

received income derived directly or indirectly from a pattern of racketeering activity by

engaging in crimes under Chapter 20 and Chapter 21 of Title 2C of the New Jersey Statutes.

58. All the defendants have, among other things, engaged in a pattern of

racketeering, including criminal conduct that has either the same or similar purposes, results,

participants, victims, methods of commission or are otherwise inter-related by distinguishing

characteristics and are not isolated incidents.

59. The criminal conduct includes, but is not limited to, violation of the following

New Jersey Statutes:

A. Theft by deception, N.J.S.A. 2C:20-4;

B. Deceptive business practices, N.J.S.A. 2C:21-7(h) by making false and

misleading written statements for the purposes of obtaining property;

C. Falsifying records or uttering any writing or record knowing that it

contains a false statement or information with purpose of deceive or injury anyone or to

conceal any wrongdoing, N.J.S.A. 2C:21-4(a);

D. Engaging in bank fraud, 18 U.S.C. 1344;

E. Engaging in wire fraud, 18 U.S.C. 1343;

F. Issuing false financial statements, N.J.S.A. 2C:21-4(b);

G. Making false or misleading statements in any advertisement addressed

to the public or to a substantial segment thereof for the purpose of promoting the purchase

or sale of services, N.J.S.A. 2C:21-7c;

H. Selling, offering or exposing for sale or delivery less than the

represented quantity of services, N.J.S.A. 2C:21-7b;

15

I.      Applying or disposing of property that has been entrusted to one as a fiduciary in the manner one knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted, whether or not the actor has derived a pecuniary benefit, N.J.S.A. 2C:21-15;

J.      Causing or inducing another by deception as to the contents of the instrument to execute the instrument effecting or purposely to effect or likely to effect the pecuniary interest of the person, N.J.S.A. 2C:21-16;

K.      Impersonating another or assuming a false identity to obtain a benefit for one's self or another or to injure or defraud another, N.J.S.A. 2C:21-17(a)(1), (2), (3), (4) and (5);

L.      Acting or offering to act as a debt adjuster without a license and without qualifying for any exemption from the license requirement, N.J.S.A. 2C:21-19(f);

M.      Knowingly engaging in the unauthorized practice of law, N.J.S.A. 2C:21-22(a);

N.      Knowingly engaging in the unauthorized practice of law and creating or reinforcing a false impression that the person is licensed to engage in the practice of law or derives a benefit therefrom or in fact causes injury to another, N.J.S.A. 2C:21-22(b)(1), (2) and (3);

O.      Transporting or possessing property known or which a reasonable person would believe to be derived from criminal activity, N.J.S.A. 2C:21-25(a), (b)(1), (2)(a), (b), (c) and (d);

P.      Conspiracy to commit the aforesaid crimes, N.J.S.A. 2C:5-2 and all its

subparts;

    Q.    Conspiring to violate any of the provisions of N.J.S.A. 2C:41-2(c);

    R.    Engaging in fraud or swindles, 18 U.S.C. 1341;

    S.    Engaging in a conspiracy to fraud and swindle, 18 U.S.C. 1349; and

    T.    Knowing and willfully violating the Money Transmitters Act, N.J.S.A. 17:15C-24.

    60.    The acts undertaken by the defendants in furtherance of racketeering activity include, but are not limited to:

    A.    Recruiting front-end and back-end affiliates to commit violation of the aforesaid crimes, which include lead generators, debt relief companies and service companies and their agents, servants and employees;

    B.    Lending a name to others for the purpose of creating a false pretense that legal and debt adjustment services are being performed by an attorney solely incidental to that attorney's practice of law thereby ostensibly exempting the services from the licensing requirement;

    C.    Marketing and soliciting materials and preparing and providing documentation and making oral representations giving the false impression the person was being represented by an attorney or licensed debt adjuster;

    D.    Unlawfully engaging in the solicitation of clients for a law firm;

    E.    Unlawfully managing, counseling, selling, pro rating or liquidating of the indebtedness of a debtor and involving a designated third party's receipt of debtor's funds for the purpose of distributing said funds among creditors in payment of debt

obligations;

F.     Conspiracy to carry out an unlawful business scheme described in this Complaint;

G.     Falsely promising to provide debt relief services and accepting money from debtors in reliance on those promises;

H.     Receiving or paying commissions, fees and other renumeration for unlawful services rendered by defendants to debtors;

I.     Advertising, marketing, promoting and providing contracts and other documentation which falsely create an illusion or impression that debt relief services are being or will be lawfully performed, constitute the practice of law or being performed incidental to the practice of law;

J.     Collecting illegal fees, charges and costs for performing illegal services and services not permitted by law;

K.     Accepting money from New Jersey residents or residents of other states doing business with the defendants within the State of New Jersey or with connection to the State of New Jersey knowing that it is unlawful to do so;

L.     Conspiracy with and amongst themselves and others to violate the provisions of N.J.S.A. 2C:41-2(d); and

M.     Receiving income or proceeds directly from the pattern of racketeering.

WHEREFORE, the plaintiff demands judgment:

A.     Finding that the acts and omissions of the defendants constitute multiple violations of Civil RICO, N.J.S.A. 2C:41-1, et seq.;

18

  B. Finding that the acts and omissions of the defendants constitute multiple instances of unlawful practices in violation of the Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.;

  C. Permanently enjoining and restraining the named defendants, and defendants John Doe(s) 1-100, said names being fictitious, being defined as their owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives, independent contractors, co-conspirators and any banks and/or financial institutions into which plaintiff's or class members' money was deposited, and all other persons or entities directly or indirectly under their control or participating in the unlawful plan and scheme from engaging in, continuing to engage in or doing any of the acts or practices set forth in this Complaint;

  D. Freezing all assets of the defendants wherever located and preventing defendants from engaging in any act of disposition of those assets in accordance with N.J.S.A. 56:8-8;

  E. Disgorgement of all illegal fees, charges and costs and other funds not already paid to creditors of the victimized plaintiff so as to restore to him any money acquired by the unlawful acts of the defendants;

  F. Compensatory and punitive damages and trebling of the damages of plaintiff as permitted by the Consumer Fraud Act and New Jersey Civil RICO Act;

  G. Requiring the defendants to pay all attorney's fees, costs and litigation expenses incurred by the plaintiff;

  H. Requiring defendants to pay pre-judgment interest on all of plaintiff's

19

damages;

I.       Such other relief as the Court deems equitable and just under the circumstances.

## COUNT TWO
### New Jersey Consumer Fraud Act

61.      Plaintiff repeats the allegations of the first 60 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

62.      The defendants in the operation of this unlawful business scheme and plan and their individual actions as part thereof have engaged in unconscionable commercial practices and fraudulent activity, made false promises and misrepresentations and knowingly omitted facts as described above in violation of N.J.S.A. 56:8-2 which include but are not limited to those acts set forth above, which have damaged the plaintiff.

WHEREFORE, the plaintiff demands judgment:

A.       Finding that the acts and omissions of the defendants constitute multiple instances of unlawful practices in violation of the Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.;

B.       Permanently enjoining and restraining the named defendants and defendants John Doe(s) 1-100, said names being fictitious, being defined as their owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives, independent contractors, co-conspirators and any banks and/or financial institutions into which plaintiffs or class members' money was deposited, and all other persons or entities directly or indirectly under their control or participating in the unlawful plan and scheme from engaging in, continuing to engage in or doing any of the acts or

practices set forth in this Complaint;

    C.    Freezing all assets of the defendants wherever located and preventing defendants from engaging in any act of disposition of those assets in accordance with N.J.S.A. 56:8-8;

    D.    Disgorgement of all illegal fees, charges and costs and other funds not already paid to creditors of the victimized plaintiff so as to restore to him any money acquired by the unlawful acts of the defendants;

    E.    Compensatory and punitive damages and trebling of the damages of plaintiff as permitted by the Consumer Fraud Act and New Jersey Civil RICO Act;

    F.    Requiring the defendants to pay all attorney's fees, costs and litigation expenses incurred by the plaintiff;

    G.    Requiring defendants to pay pre-judgment interest on all of plaintiff's damages;

    H.    Such other relief as the Court deems equitable and just under the circumstances.

**COUNT THREE**
New Jersey Debt Adjustment and Credit Counseling Act
and Money Transmitters Act

    63.    Plaintiff repeats the allegations of the first 62 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

    64.    The acts of the defendants have damaged the plaintiff who is entitled to recover his damages pursuant to N.J.S.A. 17:16G-8 and the provisions of the New Jersey Money Transmitters Act.

21

WHEREFORE, the plaintiff demands judgment:

A.     Finding that the acts and omissions of the defendants constitute multiple instances of unlawful practices in violation of the New Jersey Credit Counseling and Debt Adjustment Act; N.J.S.A. 17:16G-1, et seq. and the New Jersey Money Transmitters Act.

B.     Permanently enjoining and restraining the named defendants, and defendants John Doe(s) 1-100, said names being fictitious, being defined as their owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives, independent contractors, co-conspirators and any banks and/or financial institutions into which plaintiff's or class members' money was deposited, and all other persons or entities directly or indirectly under their control or participating in the unlawful plan and scheme from engaging in, continuing to engage in or doing any of the acts or practices set forth in this Complaint;

C.     Freezing all assets of the defendants wherever located and preventing defendants from engaging in any act of disposition of those assets in accordance with N.J.S.A. 56:8-8;

D.     Disgorgement of all illegal fees, charges and costs and other funds not already paid to creditors of the victimized plaintiff so as to restore to him any money acquired by the unlawful acts of the defendants;

E.     Compensatory and punitive damages and trebling of the damages of plaintiff as permitted by the New Jersey Debt Adjustment and Credit Counseling Act, the New Jersey Money Transmitters Act, the Consumer Fraud Act and New Jersey Civil RICO

22

Act;

F.    Requiring the defendants to pay all attorney's fees, costs and litigation expenses incurred by the plaintiff;

G.    Requiring defendants to pay pre-judgment interest on all of plaintiff's damages;

H.    Such other relief as the Court deems equitable and just under the circumstances.

## COUNT FOUR
### Civil Conspiracy

65.    Plaintiff repeats the allegations of the first 64 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

66.    The defendants, acting in concert, committed the aforesaid unlawful acts or lawful acts by unlawful means for the purpose of injuring the plaintiffs.

67.    Defendants understood the objectives of the conspiracy, accepted and agreed, either explicitly or implicitly, to do their part to further those objectives.

68.    As a result thereof, the plaintiff has suffered damages.

WHEREFORE, the plaintiff demands judgment:

A.    Finding that the acts and omissions of the defendants constitute multiple instances of unlawful practices in violation of the aforesaid New Jersey laws and that defendants conspired to commit such violations;

B.    Permanently enjoining and restraining the named defendants, and the defendant John Doe(s) 1-100, said names being fictitious, being defined as their owners, officers, directors, shareholders, founders, managers, agents, servants, employees,

23

representatives, independent contractors, co-conspirators and any banks and/or financial institutions into which plaintiff's or class members' money was deposited, and all other persons or entities directly or indirectly under their control or participating in the unlawful plan and scheme from engaging in, continuing to engage in or doing any of the acts or practices set forth in this Complaint;

      C.    Freezing all assets of the defendants wherever located and preventing defendants from engaging in any act of disposition of those assets in accordance with N.J.S.A. 56:8-8;

      D.    Disgorgement of all illegal fees, charges and costs and other funds not already paid to creditors of the victimized plaintiff so as to restore to him any money acquired by the unlawful acts of the defendants;

      E.    Compensatory and punitive damages and trebling of the damages of plaintiff as permitted by the Consumer Fraud Act and New Jersey Civil RICO Act and other New Jersey law;

      F.    Requiring the defendants to pay all attorney's fees, costs and litigation expenses incurred by the plaintiff;

      G.    Requiring defendants to pay pre-judgment interest on all of plaintiff's damages;

      H.    Such other relief as the Court deems equitable and just under the circumstances.

## COUNT FIVE
### Illegal Contract and Unjust Enrichment

69.    Plaintiff repeats the allegations of the first 68 paragraphs of the Complaint and

incorporates the same by reference as if set forth at length herein.

70.     The purported contracts between the plaintiff and defendants were illegal under New Jersey law and are void *ab initio*.

71.     Defendants will be unjustly enriched if permitted to retain the monies paid to them by the plaintiff or emanating from plaintiff's payments to other defendants as a result of the illegal and void contract.  As a result thereof, plaintiff has suffered damages.

WHEREFORE, the plaintiff demands judgment:

A.     Finding that the acts and omissions of the defendants constitute multiple instances of unlawful practices in violation of the aforesaid New Jersey laws, that any contracts are illegal and that defendants have been unjustly enriched.

B.     Permanently enjoining and restraining the named defendants, and defendant John Doe(s) 1-100, said names being fictitious, being defined as their owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives, independent contractors, co-conspirators and any banks and/or financial institutions into which plaintiff's or class members' money was deposited, and all other persons or entities directly or indirectly under their control or participating in the unlawful plan and scheme from engaging in, continuing to engage in or doing any of the acts or practices set forth in this Complaint;

C.     Freezing all assets of the defendants wherever located and preventing defendants from engaging in any act of disposition of those assets in accordance with N.J.S.A. 56:8-8;

D.     Disgorgement of all illegal fees, charges and costs and other funds not

25

already paid to creditors of the victimized plaintiff so as to restore to him any money acquired by the unlawful acts of the defendants;

    E.    Compensatory and punitive damages and trebling of the damages of plaintiff as permitted by the Consumer Fraud Act and New Jersey Civil RICO Act and other New Jersey law;

    F.    Requiring the defendants to pay all attorney's fees, costs and litigation expenses incurred by the plaintiff;

    G.    Requiring defendants to pay pre-judgment interest on all of plaintiff's damages;

    H.    Such other relief as the Court deems equitable and just under the circumstances.

## COUNT SIX
### Unconscionability

72.    Plaintiff repeats the allegations of the first 71 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

73.    Any purported contracts between plaintiff and defendants are unconscionable, both procedurally and substantively, and are therefore unenforceable and void.

74.    As a result of the illegal, unlawful and unconscionable acts of the defendants, the plaintiff has suffered damages.

WHEREFORE, the plaintiff demands judgment:

    A.    Finding that the acts and omissions of the defendants constitute multiple instances of unlawful practices in violation of the aforesaid New Jersey laws and any agreements directly or indirectly related thereto are unconscionable, unenforceable and void

26

ab initio;

B.    Permanently enjoining and restraining the named defendants, and defendant John Doe(s) 1-100, said names being fictitious, being defined as their owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives, independent contractors, co-conspirators and any banks and/or financial institutions into which plaintiffs or class members' money was deposited, and all other persons or entities directly or indirectly under their control or participating in the unlawful plan and scheme from engaging in, continuing to engage in or doing any of the acts or practices set forth in this Complaint;

C.    Freezing all assets of the defendants wherever located and preventing defendants from engaging in any act of disposition of those assets in accordance with N.J.S.A. 56:8-8;

D.    Disgorgement of all illegal fees, charges and costs and other funds not already paid to creditors of the victimized plaintiff so as to restore to him any money acquired by the unlawful acts of the defendants;

E.    Compensatory and punitive damages and trebling of the damages of plaintiff as permitted by the Consumer Fraud Act and New Jersey Civil RICO Act and other New Jersey law;

F.    Requiring the defendants to pay all attorney's fees, costs and litigation expenses incurred by the plaintiff;

G.    Requiring defendants to pay pre-judgment interest on all of plaintiff's damages;

27

H.      Such other relief as the Court deems equitable and just under the circumstances.

## COUNT SEVEN
### Class Certification

75.     Plaintiff repeats the allegations of the first 74 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

76.     This class action is brought on behalf of a class composed of all citizens or residents of the State of New Jersey who established or on whose behalf was established trust or escrow accounts maintained by the defendants RAM Payment, L.L.C. f/k/a or d/b/a Reliant Account Management, L.L.C. a/k/a Reliant Account Management Systems, L.L.C. a/k/a Account Management Systems, L.L.C., in a bank or other financial institution into which monies of the class members were transferred or deposited for the purpose of or relating to services provided by the defendants or other persons or entities in connection with debt adjustment or credit counseling services.

77.     Members of the proposed class number in the thousands and are so numerous that their joinder is impracticable.

78.     There are questions of law and fact common to each class.

79.     The claims and defenses of the named plaintiff are typical of the claims and defenses of the proposed class.

80.     The named plaintiff is a member of the proposed class and will fairly and adequately protect the interests of the proposed class.

81.     The defendants have acted and refused to act on grounds generally applicable to the class, making final injunctive relief appropriate, respecting the class as a whole and rendering class certification appropriate.

28

82.     Common questions of law and fact central to the claims of the class predominate over individual questions rendering class certification appropriate.

83.     The class action devise is a superior method of adjudicating the class members' claims as compared to other available methods for fairly and efficiently adjudicating this controversy.  Class members are financially distressed persons who have no meaningful recourse against the defendants absent collective pursuit of their monetarily small claims. The value of class members claims taken individually is such that the claims cannot as a practical matter be pursued on an individual basis.

WHEREFORE, plaintiffs demand certification of the class as set forth herein.

## COUNT EIGHT
### Other Damages to the Lead Plaintiff

84.     Plaintiff repeats the allegations of the first 83 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

85.     Plaintiff, besides being damaged by the payment of unlawful fees, charges and costs, sustained other damages in her own right through:

A.     Accumulation of interest and penalty charges on the debts which were enrolled in the fraudulent plan;

B.     Emotional distress, pain and suffering;

C.     Attorney's fees, out of pocket costs, court costs and litigation expenses;

D.     Degradation of her credit score and rating;

E.     Failure to return all monies paid by the plaintiff; and

F.     Any other unlawful activities of the defendants.

86.     These damages were caused by these unlawful acts and by the professional

29

negligence of the defendants and are in violation of the New Jersey Consumer Fraud Act, the New Jersey Civil RICO Act, the New Jersey Debt Adjustment and Credit Counseling Act, the Money Transmitters Act and the other tortious conduct as plead and constitute a conversion of plaintiff's funds.

WHEREFORE, plaintiff demands judgment against all defendants for compensatory and punitive damages, treble damages as permitted by law, attorneys fees, costs, litigation expenses, pre-judgment interest and any other relief the Court deems equitable and just under the circumstances.

POLINO and PINTO, P.C.

BY: _____

Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date: March 22, 2019

### Certification

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I am aware of no other parties who should be made a part of this action at the present time.

POLINO and PINTO, P.C.

By: _____

Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date: March 22, 2019

30

Designation of Trial Counsel

Joseph M. Pinto, Esquire is hereby designated as trial counsel for plaintiff in this

action.

POLINO and PINTO, P.C.

By: _____
Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date:  March 22, 2019

## SPOLIATION NOTICE

## TO ALL DEFENDANTS

You are hereby given notice not to destroy, conceal or alter any paper or electronic files and other data generated by and/or stored on your computers and storage media (e.g., hard disks, floppy disks, backup tapes, Zip cartridges, CDs, DVDs, etc.), or any other electronic data, such as voice mail. As you know, your failure to comply with this notice can result in severe sanctions being imposed by the Court for spoliation of evidence or potential evidence.

Through discovery we expect to obtain from you a number of documents and things, including files stored on your computers and your computer storage media.

As part of our initial discovery efforts, you will soon receive initial interrogatories and requests for documents and things, requests for admissions and other forms of discovery.

In order to avoid spoliation, you will need to provide the data requested on the original media, or on exact copies of that media (sometimes referred to as image, evidentiary, or mirror copies), and be able to prove that the copy matches the original in every respect. Do not reuse any media to provide this data.

Additionally, in order to avoid spoliation you may have to suspend certain normal computer maintenance procedures, including but not limited to such procedures as defragmenting hard drives, deleting internet cookies, deleting browser history and favorites, and running any "disk clean-up" processes.

Although we may bring a motion for an order preserving documents and things from destruction or alteration, your obligation to preserve documents and things for discovery in this case arises in law and equity independently from any order on such motion.

31

Electronic documents and the storage media on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Therefore, even where a paper copy exists, we will seek all documents in their electronic form along with information about those documents contained on the media. We also will seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions) along with any paper documents for which no corresponding electronic files exist.

Our discovery requests will ask for certain data on the hard disks, floppy disks and backup media used in your computers, some of which data are not readily available to an ordinary computer user, such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is really erased is a reference to that file in a table on the hard disk; unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing.

Accordingly, electronic data and storage media that may be subject to our discovery requests and that you are obligated to maintain and not alter or destroy, include but are not limited to the following:      .

### Introduction: Description of Files and File Types Sought

All digital or analog electronic files, including "deleted" files and file fragments, stored in machine-readable format on magnetic, optical or other storage media, including the hard drives or floppy disks used by your computers and their backup media (e.g., other hard drives, backup tapes, floppies, Jaz or Zip cartridges, CD-ROMs, DVDs) or otherwise, whether such files have been reduced to paper printouts or not. More specifically, you are to preserve all e-mails, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all databases; all CAD (computer-aided design) files, including drafts and revisions; all presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint); all graphs, charts and other data produced by project management software (such as Microsoft Project); all data generated by calendaring, task management and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of personal or portable data assistants (PDAs), such as Blackberry, PalmPilot, HP Jornada, Cassiopeia or any other Windows CE-based or Pocket PC device; all data created with the use of document management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web browser-generated history files, caches and "cookie" files generated at the workstation of each employee and/or agent in your employ and on any and all backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voice mail.

Further, you are to preserve any log or logs of network use by employees or otherwise,

32

whether kept in paper or electronic form, and to preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal computer (and/or workstation) and network server in your control and custody, as well as image copies of all hard drives retained by you and no longer in service, but in use at any time from six (6) years before the date the Complaint was filed to the present.

You are also to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files); network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

1.    Business Records: All documents and information about documents containing backup and/or archive policy and/or procedure, document retention policy, names of backup and/or archive software, names and addresses of any offsite storage provider.

A.    All e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received concerning the subject matter of this Complaint;

B.    All databases (including all records and fields and structural information in such databases), containing any reference to and/or information about or related to the subject matter of this Complaint;

C.    All logs of activity (both in paper and electronic formats) on computer systems and networks that have or may have been used to process or store electronic data containing information about or related to the subject matter of this Complaint;

D.    All word processing files, including prior drafts, "deleted" files and file fragments, containing information about or related to the subject matter of this Complaint;

E.    With regard to electronic data created by application programs which process financial, accounting and billing information, all electronic data files, including prior drafts, "deleted" files and file fragments, containing information about or related to the subject matter of this Complaint;

F.    All files, including prior drafts, "deleted" files and file fragments, containing information from electronic calendars and scheduling programs regarding or related to the subject matter of this Complaint;

G.    All electronic data files, including prior drafts, "deleted" files and file fragments about or related to the subject matter of this Complaint.

33

2. Online Data Storage on Mainframes and Minicomputers: With regard to online storage and/or direct access storage devices attached to your mainframe computers and/or minicomputers: you are not to modify or delete any electronic data files, "deleted" files and file fragments existing at the time of service of the Summons and this Complaint upon you, which meet the definitions set forth in this notice, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible for purposes of this litigation.

3. Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media: With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that at the time of service of the Summons and this Complaint upon you containing any electronic data meeting the criteria listed in paragraph 1 above: you are to stop any activity that may result in the loss of such electronic data, including rotation, destruction, overwriting and/or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with your computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal computers, minicomputers or mainframes or other computers, and whether containing backup and/or archive data sets and other electronic data, for all of your computer systems.

4. Replacement of Data Storage Devices: You are not to dispose of any electronic data storage devices and/or media that may be replaced due to failure and/or upgrade and/or other reasons that may contain electronic data meeting the criteria listed in paragraph 1 above.

5. Fixed Drives on Stand-Alone Personal Computers and Network Workstations: With regard to electronic data meeting the criteria listed in paragraph 1 above, which existed on fixed drives attached to stand-alone microcomputers and/or network workstations at the time of service of the Summons and this Complaint upon you: you are not to alter or erase such electronic data, and not to perform other procedures (such as data compression and disk de-fragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies during the pendency of this litigation.

6. Programs and Utilities: You are to preserve copies of all application programs and utilities which may be used to process electronic data covered by this notice.

7. Log of System Modifications: You are to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed in paragraph 1 above,

34

regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

8. **Personal Computers Used by Your Employees and/or their Secretaries and Assistants:** The following steps should immediately be taken to safeguard all personal computers used by you, your employees and/or their secretaries and assistants.

A. As to fixed drives attached to such computers: (I) a true and correct copy is to be made of all electronic data on such fixed drives relating to this matter, including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listings (including hidden files) for all directories and subdirectories (including hidden directories) on such fixed drives should be written; and (iii) such copies and listings are to be preserved until this matter reaches its final resolution.

B. All floppy diskettes, magnetic tapes and cartridges, and other media used in connection with such computers prior to the date of service of the Summons and this Complaint upon you containing any electronic data relating to this matter are to be collected and put into storage for the duration of this lawsuit.

9. **Evidence Created Subsequent to This Notice:** With regard to electronic data created subsequent to the date of service of the Summons and this Complaint upon you, relevant evidence is not to be destroyed and you are to take whatever steps are appropriate to avoid destruction of evidence.

In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this notice to all persons and entities with custodial responsibility for the items referred to in this notice.